**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

CHERYL D. UZAMERE,

                              Plaintiff,              1:25-CV-0024
          v.                                          (AJB/PJE)

D. GREGG, et al.,

                              Defendants.

─────────────────────────────

**APPEARANCES:**

Cheryl D. Uzmare
1209 Loring Avenue
Apt. 6B
Brooklyn, New York 11208
Plaintiff pro se

**U.S. MAGISTRATE JUDGE**
**PAUL J. EVANGELISTA**

### REPORT-RECOMMENDATION & ORDER

Plaintiff pro se Cheryl D. Uzmere commenced this action on January 6, 2025, with the filing of a complaint.  Initially, in lieu of paying the Court's filing fee, plaintiff filed a motion for leave to proceed in forma pauperis.  *See* Dkt. No. 2.  On February 10, 2025, plaintiff filed an amended complaint.[1]  *See* Dkt. No. 6.  On March 4, 2025, plaintiff paid this Court's filing fee.  *See* dkt. entry dated Mar. 3, 2025.  Presently before the Court is a sua sponte review of plaintiff's amended complaint.  *See id.*

---

[1]  An amended complaint supersedes and replaces the original complaint in its entirety and acts as the operative pleading.  *See* N.D.N.Y. L.R. 15.1(a).

## I. **Standard of Review**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the pleading stage, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co*., 621 F.3d 111, 123 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 678). However, the Court need not accept as true "legal conclusions." *Iqbal*, 556 U.S. at 678. A pro se complaint is entitled to special solitude and must be liberally construed, meaning that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Nevertheless, even where a plaintiff has paid the filing fee, a district court may dismiss the complaint *sua sponte* if it determines that it lacks subject matter jurisdiction or that the complaint is frivolous. *See* FED. R. CIV. P. 12(h)(3); *Fitzgerald v. First E. Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (per curiam); *see Tyler v. Carter*, 151 F.R.D. 537 (S.D.N.Y. 1993), *aff'd*, 41 F.3d 1500 (2d Cir. 1994) ("The question is whether such claims asserted by a fee-paying plaintiff are subject to *sua sponte* dismissal by a district court under Rule 12(b)(6). I hold that they are. A plaintiff asserting fantastic or delusional claims should not, by payment of a filing fee, obtain a license to consume limited judicial resources and put defendants to effort and expense. The policies arguing against sua sponte Rule 12(b)(6) dismissals do not apply in these

circumstances.").    "An action is 'frivolous' when either: (1) 'the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy'; or (2) 'the claim is based on an indisputably meritless legal theory.'" *Livingston v. Adirondack Beverage Co*., 141 F.3d 434, 437 (2d Cir. 1998) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (additional internal quotation marks and citations omitted).  Further, a complaint that is "so confused, ambiguous, vague[,] or otherwise unintelligible that its true substance, if any, is well disguised," fails to comply with Rule 8 [of the Federal Rules of Civil Procedure]." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).

The Court is required to construe pro se pleadings liberally and interpret them to raise the "strongest [claims] that they suggest."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *Triestman v. Fed. Bureau of Prison*s, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted).

> At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest" that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

*Triestman*, 470 F.3d at 477 (internal citations, quotation marks, and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191-92 (2d Cir. 2008). "The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with . . . the Federal Rules of Civil Procedure." *Kastner v. Tri State Eye*, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994)).

III.  **Discussion**[2]

A.  **Litigation History**

Plaintiff has bar orders entered against her in at least the Eastern District of New York, Southern District of New York, and Albany County Supreme Court.  *See* Dkt. No. 6-43 at 6-36.  Plaintiff has also commenced actions in federal courts in this state and others.  To the extent it can be deciphered, it appears plaintiff's claims all stem from her belief of the existence an enormous conspiracy in which various judges, officials, attorneys, and people in positions of leadership, government or otherwise, seek to cause her[3] great misfortune based on her belief that judges or people in government who have Ashkenazi Jewish heritage – or whom she believes to have such heritage – are violent, racist pedophiles. *See* Dkt. No. 6.  She asserts that she is being targeted by those individuals and entitles, or supporters of those individuals and entities, out of their racism against her, a desire to quash her public sharing of her beliefs, and – somehow – perverse sexual gratification.  *See id.*

As the Eastern District of New York has laid out:

Plaintiff has a history of filing vexatious and harassing lawsuits necessitating restrictions on access to the court. She has filed over 20 federal cases in the district courts of New York and Rhode Island, the United States Court of Federal Claims, and the United States Court of Appeals for the First and Second Circuits. The vast majority of these cases are related to Plaintiff's issues with her estranged husband. For example, Plaintiff has filed the following cases in the Eastern District of New York:

*Uzamere v. John Doe, et al.*, No. 07-CV-2471 (NGG) (LB) (E.D.N.Y. July 6, 2007) (case dismissed for lack of subject matter jurisdiction regarding Plaintiff's divorce);

---

[2]  The Court has provided plaintiff with copies of unpublished decisions cited herein, except for those in which plaintiff was a party or has already appended to her amended complaint.
[3]   Plaintiff's complaint also suggests that other African-Americans and non-Jewish people are also targeted, though she focuses on her own experience.

*Uzamere v. Bush, et al.*, No. 08-CV-0891 (NGG) (LB) (E.D.N.Y. Apr. 8, 2008) (case dismissed and Plaintiff warned that the filing of frivolous and vexatious complaints may result in sanctions);

*Uzamere v. State of New York, et al.*, No. 09-CV-2703 (NGG) (LB) (E.D.N.Y. July 9, 2009) (same), *appeal dismissed*, No. 09-3197-cv (2d Cir. Oct., 13, 2009); ECF No. 12-4).

The Court takes further notice that Plaintiff has inundated the Court with voluminous submissions which has burdened the Court's resources and that she has, at times, engaged in harassing, and sometimes antisemitic telephone calls to the Clerk's Office and to chambers.

- *Uzamere v. USPS*, No. 09-CV-3709 (NGG) (LB) (E.D.N.Y. Oct. 21, 2009) (same);
- *Uzamere v. Cuomo, et al.*, No. 11-CV-2831 (NGG) (LB) (E.D.N.Y. June 22, 2011) (case dismissed as frivolous and noting that "Plaintiff has a long, tired history of vexatious litigation in this court."), *appeal dismissed*, No. 11-2713-cv (2d. Cir. Nov. 28, 2011), *cert. denied*, 565 U.S. 1264 (Mar. 19, 2012).

Plaintiff has filed in the Southern District of New York:

- *Uzamere v. Family Court*, No. 94-CV-4200 (TPG), slip op. (S.D.N.Y. June 8, 1994) (case dismissed)
- *Uzamere v. Allen E. Kaye, P.C., et al.*, 09-CV-3506 (LBS) (S.D.N.Y. Apr. 2, 2009) (case dismissed for lack of subject matter jurisdiction and immunity and warning Plaintiff that she may be barred from filing complaints related to her husband without first seeking leave of Court), *appeal dismissed*, No. 09-1600-cv (2d Cir. June 24, 2009), *cert. denied*, 558 U.S. 965 (Oct. 13, 2009);
- *Uzamere v. USPS, et al.*, No. 10-CV-7668 (LAP) (S.D.N.Y. Oct. 6, 2010) (case dismissed)
- *Uzamere v. State of New York, et al.*, No. 19-CV-9064 (CM) (S.D.N.Y. Oct. 22, 2019) (case dismissed and Plaintiff barred from filing future in forma pauperis actions in the SDNY without first obtaining permission from the Court), appeal dismissed, No. 19-3825 (2d Cir. Apr. 10, 2020).

Plaintiff has filed in the Federal Court of Claims:

- *Uzamere v. United States*, Nos. 10-585C, 10-591C, 2010 WL 3528897 (Fed. Cl. Sept. 3, 2010) (two cases consolidated and dismissed for lack of subject matter jurisdiction).

Plaintiff has filed in the District of Rhode Island:

- *Uzamere v. United States*, No. 13-505 (WES), 2013 WL 5781216 (D.R.I. Oct. 25, 2013) (case dismissed and Plaintiff warned against filing further

frivolous actions), *aff'd*, No. 13-2454 (1st Cir. Apr. 11, 2014), *cert. denied*, 574 U.S. 981 (Nov. 3, 2014).

*See Uzamere v. Uzamere*, 22-CV-4876 (LDH/LB), 2022 WL 4451107 (E.D.N.Y. Sept. 23, 2022), *reconsideration denie*d 2022 WL 17718555 (Dec. 15, 2022); Dkt. No. 6-43 at 16-17.[4]

## B.  Amended Complaint

Plaintiff's amended complaint is 142 pages in length with 2,143 pages in appended exhibits.[5]  *See* Dkt. No. 6.  Plaintiff amended complaint includes 143 named defendants and tens of thousands of Doe defendants.  *See id.*  Plaintiff sues judges at various levels of city, county, state, and federal courts; non-judiciary court staff; law enforcement officials and officers; New York State; New York Police Department; United States Attorneys and Assistant United States Attorneys for various districts across the country; Attorneys General and Assistant Attorneys General; the State of New York; the Governor of the State of New York; federal officials; city and state agencies; attorneys for city, state, and federal agencies; private attorneys; public and private colleges; college

---

[4] *See also Uzamere v. Sunshine*, 56 A.D. 787 (NY App. Div. 2008) (dismissing Article 78 proceeding), *Uzamere v. Idehen*, 38 N.Y.3 1163 (N.Y. 2022) (dismissing appeal); *Uzamere v. Uzamere*, 28 Misc. 3d 1027(A) (Kings County July 13, 2010), *Uzamere v. Uzamere*, 41 N.Y.3d 933 (N.Y. 2024) (appeal dismissed); *Uzamere v. New York*, 19-CV-9064 (CM), 2019 WL 5212294 (S.D.N.Y. Oct. 15, 2019) (seeking bar order), *appeal dismissed* 2020 WL 2521302 (2d Cir. 2020), *cert. denied* 141 S.Ct. 621 (2020); *Uzamere v. Kaye*, 558 U.S. 965 (2009) (cert denied); *Uzamere v. Daily News, L.P.*, No. 403205/10, 946 N.Y.S.2d 69 (N.Y. S. Ct, N.Y. Cnty. Nov. 10, 2011) (dismissing case).

[5] Plaintiff submitted various documents as exhibits or attachments.  These exhibits have been reviewed in connection with the initial review of plaintiff's complaint.  *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (internal quotation marks and citations omitted).

professors, faculty, and college administrators; college safety officers; a public

defender agency; her daughter; and her husband.. *See id.*

Plaintiff states that she:

bring[s] this action to permanently enjoin the defendants, who, as anti-black bigots and members of a violent, seditious, and rabbi-influenced ethnoreligious cartel from further employing government institutions' termination mechanisms to engineer antitrust restraints on my constitutional right to receive congressionally mandated, government-funded financial, educational and protective services which the defendants now treat as Jew-owned merchandise that is withheld from me to subject me to public defamation/public denigration; political persecution; sexually sadistic law enforcement terrorism, educational and economic deprivation to which Jews subject African Americans, Ethiopian Jews and Palestinians; and to enforce the Babylonian Talmud's espousal of the hatred of people of African descent; the Babylonian Talmud's espousal of Jews' right to lie to non-Jews in court settings; the Babylonian Talmud's espousal of Jews' right to have sex with children; the Babylonian Talmud's espousal of Jews' right to subject non-Jews to theft, kidnapping and murder with impunity; and the Babylonian Talmud's prohibition against reporting the tortious and criminal acts committed by lawbreaking Jews as an actionable act of antisemitism in a court of law, for which Jewish leadership's anti-gentile, predatory acts are protected by the International Holocaust Remembrance Alliance use of the 'working definitions of antisemitism' to duplicitously place Jews in a perpetual state of Munchausen Syndrome by proxy victimhood as a cover . . . [.]

Dkt. No. 6 at 29-30.

Plaintiff makes many references to and provides and attachments of documents

that appear relevant to her marriage, divorce, and spousal support issues. *See, e.g.*,

Dkt. No. 6 at 73-74.   Plaintiff refers to a decades-long conspiracy, potentially beginning

in 1979, in which she claims she was denied spousal support and child support, her

children were placed in foster care (though, she claims to have placed them voluntarily)

and "trafficked by members of the Democratic Party's Babylonian Talmud-adherent

Ashkenazi Jewish cartel-controlled foster care sex trade where my children were both

sodomized," she was denied a variety of government services and help, she was

subjected to baseless and false criminal prosecution, denied assistance of counsel, provided with falsified documents, and subjected to involuntary psychiatric commitment, and intimidation by a variety of defendants, perhaps most prominently mentioned being U.S. District Judge Nicholas Garaufis of the Eastern District of New York – all as part of the overall conspiracy to "enforce the Babylonian Talmudic Law of Moser's Prohibition from Reporting Tortious and Criminal Acts of Lawbreaking Jews." Dkt. No. 6 at 85-88. Plaintiff contends that other judges, in dismissing plaintiff's civil complaints, (1) "engag[e] in willful blindness regarding the criminal case that was still pending for which I did not have an attorney, and for which I did not receive assistance from an attorney[,]" or (2) wrongly dismiss her lawsuits because they believe her expressed viewpoints are antisemitic. *Id.* at 89-91. She refers to a fraudulent marriage and immigration fraud perpetrated by her husband and his "Jewish attorneys Allen E. Kaye, Harvey Shapiro and Jack Gladstein," and details her efforts to seek legal relief against her husband and his attorneys and to obtain spousal and child support from her husband. *Id.* at 77-78.

Plaintiff further accuses of the Eastern and Southern Districts of New York of violating her First Amendment free speech rights, Fifth Amendment due process rights, Fourteen Amendment equal protection rights "by withholding assistance of counsel; and by withholding their knowledge of the existence of the U.S. Department of Homeland Security's and the U.S. Attorney's Office's clandestine prosecution of the criminal case *United States of America v. Cheryl D. Uzamere*, Violation No. 6185448." Dkt. No. 6. She contends that from "2018 to 2023, I was maliciously prosecuted in secret without the assistance of counsel; stalked, and sexually harassed by defendant federal judge, the Honorable Nicholas G. Garaufis." *Id.* at 31.

After citing to documents from six cases appended to her complaint – cases that plaintiff claims are "[n]ow pending before the New York State Court of Appeals, the New York State Supreme Court Appellate Division for the First Judicial Department and the New York State Supreme Court Appellate Division for the Third Judicial Department" – plaintiff states that her

> [g]oal is to have this Court render a decision that prevents defendant New York State from denying my Fifth Amendment right to due process, and my Fourteenth Amendment right as a non-Jew to litigate subject matter for which the New York State Supreme Court has jurisdiction without the threat of having my ability to file lawsuits in New York State barred because of "deeply troubling antisemitic decisions."

Dkt. No. 6 at 49-50 (citing (a) Dkt. No. 6, Exh. 3 (Dkt. No. 6-4), *Uzamere v. Uzamere*, 2023-02411 (Supreme Court, Appellate Division, First Department); (b) Dkt. No. 6, Exh. 4 (Dkt. No. 6-5), *Uzamere v. Uzamere, et al*., APL-2025-0027, New York State Court of Appeals, Prelim. Appeal Stmt.; (c) Dkt. No. 6, Exh. 5 (Dkt. No. 6-6), *Uzamere v. Uzamere, et al.*, APL-2025-0029, New York State Court of Appeals, Prelim. Appeal Stmt.; (d) Dkt No. 6, Exh. 6 (Dkt. No. 6-7), *Uzamere v. Hochul, et al., Supreme Court*, CV-23-1021, Appellate Division, Third Department, Appellant's Brief; (e) Dkt. No. 6, Exh. 7 (Dkt. No. 6-8), *Uzamere v. Various Known and known Babylonian Talmud-Adherent Jews as Members of a Victim Humiliation-Producing, Sexually Sadistic African- and Christian Persecuting Hate Group*, 23-CV-2095, Appellant's Brief; (f) Dkt. Np. 6, Exh. 8A (Dkt. No. 6-9), *Uzamere v. The State of New York*, CV-23-2095, Appellate Division, Third Department, Appellant's Brief; (g) Dkt. No. 6, Exh. 8B (Dkt. No. 6-10), *Uzamere v. The State of New York*, CV-23-2095, 23-CV-2095, Appellate Division, Third Department, Appellant's Reply Brief).

Plaintiff defines the "nature of action" as one "for equitable relief and damages resulting from the defendants' violation of the following legal principles":

a. Seditious conspiracy to delay the execution of any law of the United States (not actionable as a civil matter) in violation of 18 U.S.C. § 2384;

b. Implied cause of action pursuant to 18 U.S.C § 1964 and its application in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (encompasses malicious prosecution; abuse of process; judges' commission of nonjudicial acts both tortious and criminal);

c. Willful blindness regarding the clandestine adjudication of the criminal case *United States of America v. Cheryl D. Uzamere* without my knowing it, and without the assistance of counsel in violation of the Sixth Amendment;

d. Suppression of exculpatory evidence in violation of the Fifth Amendment's application in the case *Brady v. Maryland*, 373 U.S. 83 (1963);

e. Malicious prosecution and the statute of limitation for filing after criminal proceedings are terminated in the plaintiff's favor;

f. Judicial immunity is nonexistent for judges who engage in nonjudicial acts, or who render judgments for which they lack subject matter jurisdiction;

g. Viewpoint discrimination by government entitles (sic.) is unconstitutional;

h. Statements made by counsel and parties during the course of judicial proceedings are absolutely privileged;

i. Courthouse corruption violates 18 U.S.C. § 1964 and its application in the case *Chevron Corp. v. Donziger*, 833 F.3d 74 (2d Cir. 2016);

j. State's creation of state law prohibiting the filing of "deeply troubling antisemitic submissions" is an abrogation of the Fourteenth Amendment's Equal Protection Clause; and

k. The defendants' misuse of the First Amendment's Religion Clause to employ institutional mechanisms to engineer antitrust restraints on constitutional freedoms resulting from the defendants' membership in a seditious, ethnoreligious cartel violate the Sherman Act.

Dkt. No. 6 at 50-51.  Plaintiff further raises state law claims for intentional infliction of emotional distress against all defendants and references to the Racketeer Influenced and Corrupt Organizations Act and "RICO-predicate felonies" the Sherman Antitrust Act.[6]  *See* Dkt. No. 6 at 22, 44, 48, 131-33, 135-139.

---

[6]  Plaintiff contends that "for over forty (40) years," she has been denied child support and spousal support in "malicious violat[ion of] the Sherman Act by employing institutional mechanisms built within

Embedded within plaintiff's complaint, are excerpts of: studies, scholarly journals, surveys, books, news and opinion articles, a film poster, court decisions and filings, the Merck Manual, the Diagnostic and Statistical Manual of Mental Disorders, and several website hyperlinks.[7]  *See generally* Dkt. No. 6.  She also provides case citations, with brief explanations of those cases, for cases in which plaintiff is not a party but which she believes support her claims that that the judges, prosecutors, or state officials involved in those cases are members of the "ethnoreligious cartel."  Dkt. No. 6 at 68-72.  Plaintiff seeks declaratory and injunctive relief and monetary damages.  *See* Dkt. No. 6 at 140-42.

## C.  **Analysis**

Plaintiff contends that defendants[8] subjected her, or aided and abetted in her subjection to, the dismissal of her legitimate legal cases; blocking of her access to the courts, including denial of counsel in a criminal case; deprivation of education; deprivation of economic support, benefits, and services; denial of her children or the ability to raise/protect her children; "sexual bondage" "sexual stalking" and/or "sexual harassment"; and forcible institutionalization in mental health facilities, among other transgressions, because they are members or supporters of the "members of New York State and New York City's Babylonian Talmud-adherent, Ashkenazi Jewish cartel" who

---

courts and other government-funded services to treat governmental services as a 'Supply' that Ashkenazi Jewish leaders restrained me from receiving and withheld at will, thereby abrogating my Fourteenth Amendment right as a non-Jews (sic) by withholding governmental services that are not withheld from Jews who are similarly situated."  Dkt. No. 6 at 136-37.

[7] Plaintiff, at points, provides minimal context for inclusion of some of these sources, but for many others, provides none.  *See generally* Dkt. No. 6.

[8] Plaintiff often refers to defendants collectively, raising an additional issue of personal involvement for at least the section 1983 constitutional claims, as well as a concern regarding proper notice to defendants of the claims against them.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.");  *see* also FED. R. CIV. P. 8; *Iqbal*, 556 U.S. at 678.

hate African-Americans and plaintiff, specifically, because she shares her beliefs about that the "cartel," including that its alleged members and supporters condone "pedophilia and sexual violence" and are racist toward African-Americans.  Dkt. No. 6 at 73-74.

Plaintiff refers, throughout the amended complaint, to a variety of civil and criminal cases at the state and federal levels, some from several years ago, including decades-old custody and child support issues involving her husband, the identity of her husband, their marital status, and his immigration status.  *See* Dkt. No. 6.

### 1. Frivolity

In dismissing plaintiff's complaint before the Eastern District of New York, that Court stated:

> Plaintiff's complaint contains allegations of the delusional variety. The federal claims rely entirely on her contention that all 482 Defendants are part of a wide-ranging "Babylonian Talmudic, Ashkenazi Jewish ethnoreligious cartel" that allegedly condones "pedophilia and sexual violence," and is somehow responsible for Plaintiff's failure to obtain spousal support from her estranged husband. (See generally Am. Compl.) Among the 482 Defendants is anyone ever associated with Plaintiff's claim for spousal support, judges (federal and state), elected officials (federal and state), government officials (federal and state), agencies of the federal, state, and local governments, attorneys, federal and state prosecutors, newspapers, private companies, non-profit organizations, and the Attorney General for every state in the nation. Parsing the amended complaint reveals zero factual allegations that support this alleged conspiracy, which demonstrates the claims' delusional nature. The amended complaint, therefore, must be dismissed.

Dkt. No. 6-43 at 15.  The Eastern District further noted, "[s]upporting Plaintiff's claims are a plethora of fantastical and outlandish allegations, many of which are rooted in Plaintiff's blatantly anti-Semitic beliefs."  Dkt. No. 6-43 at 3.

Even when read with special solicitude, plaintiff's amended complaint must be dismissed as frivolous.  *See* Dkt. No. 6.  All of plaintiff's causes of action against defendants must be dismissed as frivolous because they are all premised on the "irrational" theory that the tens of thousands of defendants are collectively engaged in a decades-long conspiracy to violate plaintiff's constitutional rights, prosecute her, involuntarily hospitalize, her prevent her (decades ago) from obtaining spousal and child support, or deprive her access to the courts, based on their participation in or connection with a "Babylonian Talmudic, Ashkenazi Jewish ethnoreligious cartel" that "hate[s] African-Americans" and allegedly condones "pedophilia and sexual violence" and/or their disagreement with and plaintiff's public sharing of her beliefs that they engage in violent acts and pedophilic acts with children, as "directed by rabbis."  *Sun v. Newman*, No. 18-CV-4010 (VSB), 2018 WL 11465751, at *1 (S.D.N.Y. May 21, 2018) (""Plaintiff's allegations rise to the level of the irrational, and there is no legal theory on which he can rely.") (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)); *Haque v. Bush*, No. 17-CV-6043 (WFK), 2017 WL 8780797, at *2 (E.D.N.Y. Nov. 16, 2017) ("Such allegations can, under the law, be described only as "fanciful," "fantastic," and "delusional," even under the very liberal reading courts accord pro se pleadings, and even if Plaintiffs aver them to be true.") (internal citations omitted).

As the Eastern District aptly put it, "[p]arsing the amended complaint reveals zero factual allegations that support this alleged conspiracy, which demonstrates the claims' delusional nature."  *Uzamere v. Uzamere*, 22-CV-4876 (LDH/LB), 2022 WL 4451107, at *4 (E.D.N.Y. Sept. 23, 2022); Dkt. No. 6-43 at 15.  What is clear is that every perceived loss or wrong plaintiff has encountered in her life in the past several decades, she

associates with her belief that this has occurred because of the "cartel."  Thus, plaintiff's amended complaint must be dismissed in its entirety based on frivolity.

As will be discussed below, plaintiff's claims are also subject to dismissal on several additional grounds.[9]

## 2.  **First Amendment Claims**

Plaintiff contends that the Eastern District of New York and Southern District of New York's dismissal of her cases, *Uzamere v. Uzamere*, No. 22-CV-4876 (LDH/LB), 2022 WL 4451107, at *4 (E.D.N.Y. Sept. 23, 2022) and *Uzamere v. New York*, No. 19-CV-9064 (CM), 2019 WL 5212294 (S.D.N.Y. Oct. 15, 2019), and various state courts'[10]

---

[9]   The undersigned notes that plaintiff seeks to sue a municipal entity and its agents/officials but fails to set forth the existence of a policy or custom as *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978) requires. *See Jordan v. New York*, 343 F. Supp. 2d 199, 202 (W.D.N.Y. 2004) ("[A]lthough municipalities are considered 'persons' for purposes of . . . § 1983, local governments . . . may not be held liable under § 1983 unless the challenged action was performed pursuant to a municipal policy or custom."); *Los Angeles Cnty., Cal. v. Humphrie*s, 562 U.S. 29, 131 S.Ct. 447, 449, 178 L.Ed.2d 460 (2010) (holding that a plaintiff must demonstrate a municipal policy or custom regardless of whether the plaintiff seeks damages or prospective relief).  Although the undersigned chooses not to reach this analysis because plaintiff's claims fail for the many other reasons set forth herein, for sake of completeness, the undersigned highlights the *Monell* issues.

[10] In her causes of action, for the most part, plaintiff does not specify against which defendants she seeks to proceed, instead referring to defendants, collectively.  Plaintiff appears to specify that her First Amendment claims, pursuant to section 1983, are against "Defendant New York's State's judiciary" and appears to seek to proceed on a First Amendment claim against the federal defendants via a claim of "courthouse corruption as applied in *Chevron Corp. v. Bivens*, 18 U.S.C. § 1964."  Dkt. No. 6 at 132-33. The undersigned is unable to locate any case with this caption; however, elsewhere in the amended complaint, plaintiff cites *Chevron Corp. v. Donziger*, 833 F.3d 74 (2d Cir. 2016) and 18 U.S.C. § 1964. *See id.* at 44-45.  Plaintiff provides no substantive analysis or support for why *Chevron Corp. v. Donziger* is relevant or applies to provides this Court with jurisdiction to review such claims.  Although it is exceedingly unclear, it appears she is contending that this case and RICO provides a basis to review her First Amendment claims and her created "courthouse corruption" claims against the federal defendants. *See* Dkt. No. 6 at 50-51.  Plaintiff does cite *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* elsewhere in her complaint to argue that there is an "implied cause of action," but does not appear to claim that *Bivens* provides the Court with jurisdiction to review her First Amendment claims. See Dkt. No. 6 at 41.  Regardless, as the District of Rhode Island held in reviewing another of plaintiff's complaints alleging similar claims:

> In addition to these claims, the Amended Complaint is replete with a host of other constitutional and statutory theories, making it difficult to ascertain whether there might be a viable claim buried among them. Nevertheless, in an attempt to rationalize at least her raw constitutional claims (such as those grounded in the First, Fourth and Sixth Amendments), and reading her Amended Complaint liberally as her pro se status requires, the Court assumes, where appropriate, that they are asserted through the customary vehicles of either *Bivens v. Six Unknown Agents of Federal Bureau of*

dismissal or unfavorable rulings on her cases over the years arise out of "content and viewpoint discrimination," "restriction on political expression," "overinclusiveness/ substantial overbreadth," imposes "ideological litmus test and compelled speech," and "discrimination based on political beliefs and associations."  Dkt. No. 6 at 132-33.  More specifically, plaintiff contends that judges have "created . . . case law" prohibited her from "the filing of 'deeply troubling antisemitic submissions[,]"[11] denied her poor person relief, "artificially trigger untimeliness," and "permanently bar my access to the New York State Unified Court System regarding causes of action for which federal courts lack subject matter jurisdiction; and from the federal court system that is duty-bound to dismiss causes of action for which federal courts lack subject matter jurisdiction." Dkt. No. 6 at 51, 105, 126.[12]

Plaintiff's amended complaint provides that the viewpoint discrimination stems from the judicial officers' and others' membership/participation in, or aiding and abetting of, the "seditious conspiracy."  Dkt. No. 6.  Review of plaintiff's prior decisions, however, indicate that plaintiff's First Amendment claims are frivolous and fail to state a claim

---

*Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for federal agents, or 42 U.S.C. § 1983, for state actors."
*Uzamere v. United States*, No. CA 13-505 S, 2013 WL 5781216, at *3 (D.R.I. Oct. 25, 2013), *aff'd* (1st Cir. Apr. 11, 2014).  Ultimately, as plaintiff's claims are entirely frivolous, they cannot proceed whether based on *Bivens* or any other theory.

[11]  Plaintiff further contends that the "judiciary's creation of case law prohibiting the filing of 'deeply troubling antisemitic submissions' is an abrogation of the Fourteenth Amendment that triggers the application of 42 U.S.C. § 1983 against non-federal employees." Dkt. No. 6 at 48.  It is genuinely unclear what plaintiff is trying to argue with this point.  This "deeply troubling" language appears to come a decision of Justice Mark L. Powers, of the Supreme Court, Appellate Division, Third Judicial Department (formerly a justice of New York State Supreme Court), which U.S. District Judge La Shann D'Arcy Hall for the Eastern District of New York and U.S. District Judge for the Southern District of New York Colleen McMahon also cite.  Thus, plaintiff somehow associates this language with "the State's creation of state law prohibiting the filing of antisemitic submissions[.]"  Dkt. No. 6 at 50, 103.  Whether plaintiff is contending that section 1983 should apply to nonstate actors, that the federal judiciary somehow abrogated the Fourteenth Amendment such that she should be permitted to sue the State of New York, or that the federal judiciary's conduct should permit her to be able to pursue section 1983 claims against federal judges or other federal officers, all claims are frivolous and without any legal basis.

[12]  Plaintiff's First Amendment claims are enmeshed with her claims of due process.

because those cases were not dismissed because of viewpoint discrimination. Although some of these decisions observed that plaintiff's submissions contained language that was antisemitic or troubling, those observations are dicta.   It is abundantly clear that those cases were decidedly not dismissed because of the judges' beliefs that her claims or statements were antisemitic or and/or troubling; rather, the dismissals were on other sound legal grounds, such as frivolity, lack of subject matter jurisdiction, collateral estoppel/res judicata, and many others.  Accordingly, in addition to dismissal for frivolity grounds, plaintiff's First Amendment claims can be alternatively dismissed for failure to state a claim upon which relief can be granted.

### 3.  *Rooker-Feldman* & *Younger*

To the extent plaintiff seeks this Court to: (1) intervene and/or direct judges and courts in pending actions on how to proceed, *see* Dkt. No. 6 at 49-50; (2) seeks review of decisions already decided against her, before either the state or federal court; or (3) issue a declaration that the federal and state courts violated her constitutional rights, this Court may not do so.  *See Younger v. Harris*, 401 U.S. 37 (1971); *see also Walker v. O'Connor*, No. 1:22-CV-581 (DNH/TWD), 2022 WL 2341420, at *6 (N.D.N.Y. June 29, 2022), *report and recommendation adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022).

As to the currently-pending state court proceedings, this Court is barred from such review under the *Younger* abstention doctrine.  Under *Younger*, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings."  *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002).

As to those state court cases that are no longer pending, such review is barred by *Rooker-Feldman*.  "Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."  *Porter v. Nasci*, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), *report and recommendation adopted*, 2024 WL 3158645 (N.D.N.Y. June 25, 2024); *see Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) ("The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases.") (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)).  *Rooker-Feldman* "also prohibits a district court review of state court judgments to claims that are 'inextricably intertwined' with a state court's determinations."  *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 355 (E.D.N.Y. 2004) (citing *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002)).

Similarly, as to plaintiff's claims regarding the federal court decisions, even if, *arguendo*, the issues of frivolity were not a bar to review of the Eastern[13] and Western District of New York's decisions, this Court cannot review decisions of other federal courts.  The appropriate mechanism for review is to appeal to the proper court of appeals, and if such appeal is unsuccessful, to seek review from the Supreme Court of the United States.  Accordingly, insofar as plaintiff appears to seek review over both

---

[13]  In addition to the statute of limitations bar because plaintiff commenced this action more than three years after the filing of the Eastern District of New York decision.  *See, e.g., Kulpa o/b/o Kulpa v. Glass*, 903 F. Supp. 321, 322 (N.D.N.Y. 1995) ("[T]he statute of limitations for a section 1983 action brought in New York is three years.").

pending and nonpending state court actions or state court decisions, this Court lacks subject matter jurisdiction over these claims due to *Younger* and *Rooker-Feldman*, and lacks similarly lacks subject matter jurisdiction to perform an appellate review of decisions from other federal district courts.  Accordingly, it is recommended that, insofar as plaintiff seeks this Court to review or intervene in any way with pending or decided state court decisions, or review the decisions of other federal district courts, it is recommended that such requests be dismissed without prejudice and without opportunity to amend for lack of subject matter jurisdiction.

### 4.  Judicial Immunity & Quasi Judicial Immunity

Plaintiff's claims against all judicial defendants are also barred under the doctrine of absolute judicial immunity. "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." *Zavalidroga v. Girouard*, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam)).  "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.'" *Id.* (quoting *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004)).  "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." *Id.* (citation omitted); *see Positano v. New York*, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." *Zavalidroga*, 2017 WL 8777370, at *8 (citing *Mitchell v. Forsyth*, 472 U.S.

511, 526 (1985)).  "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.'" *Id.* (quoting *Mireles*, 502 U.S. at 11-12).  "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.'" *Pacherille v. Burns*, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting *Ceparano v. Southampton Just. Ct.*, 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)).  "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."  *Ceparano*, 404 F. App'x at 539 (internal quotation marks and citation omitted).  "Further, if the judge is performing in his judicial capacity," he "'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.'"  *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).  "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.'"  *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (quoting *Mireles*, 502 U.S. at 11)).

Although plaintiff contends that the various judges engaged in nonjudicial acts or acted outside of their jurisdiction, her claims are unsupported and without force.  Dkt. No. 6 at 43, 46, 50, 124-26.  However, "[t]he scope of the judge's jurisdiction must be

construed broadly, such that a court acts in the absence of all jurisdiction only when it does not have any statutory or constitutional power to adjudicate the case." *Dickerson v. Siegal*, No. 23-CV-3859 (EK/LB), 2023 WL 6158833, at *3 (E.D.N.Y. Sept. 21, 2023) (citations and internal quotation marks omitted). Plaintiff's amended complaint is devoid of any nonfrivolous and nonfantastical facts to support her claim that any judge acted outside of their jurisdiction. *See Pacherille*, 30 F. Supp. 3d at 163; *see Olszyk v. Thorne*, No. 3:20-CV-0445 (TJM/ML), 2020 WL 5634328, at *5 (N.D.N.Y. June 17, 2020) ("The Complaint is devoid of facts plausibly suggesting that Defendant [Judge] Barrasse acted in the clear absence of all jurisdiction. As a result, I recommend that the claims against Defendant Barrasse be dismissed in their entirety based on the doctrine of absolute judicial immunity."), *report and recommendation adopted*, 2020 WL 5633791 (N.D.N.Y. Sept. 21, 2020).

"Judicial immunity has been extended to court clerks and 'others who perform functions closely associated with the judicial process' when they are performing discretionary acts of a judicial nature which are essential to the judicial process, especially the filing of court documents and managing a court's calendar." *Calley v. Town of Cortlandt*, No. 19-CV-5453 (CM), 2019 WL 11880434, at *5 (S.D.N.Y. July 8, 2019) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985), and citing *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (extending judicial immunity to state court clerks who were ordered by Appellate Division judges not to provide a litigant with documents and not to expand the record on appeal), and *Pikulin v. Gonzales*, No. 07-CV-0412 (CBA), 2007 WL 1063353, at *2 (E.D.N.Y. Apr. 5, 2007) (extending judicial immunity to the federal court clerk with respect to claims arising out of the filing and docketing of

legal documents)).  In other words, "[c]ertain actors associated with the courts enjoy absolute, quasi-judicial immunity from suit because such immunity is 'necessary to protect the judicial process.'"  *Gross v. Rell*, 695 F.3d 211, 215 (2d Cir. 2012) (quoting *Burns v. Reed*, 500 U.S. 478, 485 (1991)).  Courts have held that "Clerk's Office activities of filing and docketing legal documents" are an "integral part of the judicial process" and are, thus, entitled to absolute immunity.  McKnight v. Middleton, 699 F. Supp. 2d 507, 526 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011) (summary order); *see Humphrey v. Court Clerk for the Second Circuit*, No. 08-CV-0363 (DNH/DEP), 2008 WL 1945308, at *2 (N.D.N.Y. May 1, 2008) (explaining that court clerks enjoy absolute immunity "if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court") (citing *Rodriguez*, 116 F.3d at 67); *see also Argentieri v. Clerk of Ct. for Judge Kmiotek*, 420 F. Supp. 2d 162, 165 (W.D.N.Y. 2006) ("Inasmuch as [the] plaintiff claims that [the] defendants violated his rights by refusing to acknowledge his motions or to schedule his court proceedings, [the] defendants were assisting judges in performing essential judicial functions. As a result, [the] plaintiff's claims are barred by absolute immunity.").

Accordingly, the undersigned observes that the claims against the various judicial defendants may alternatively be dismissed on the basis of absolute judicial immunity and against court clerks on the basis of quasi-judicial immunity.

### 5. **Sovereign Immunity & Eleventh Amendment Immunity**

The claims against the state defendants and individual officers in their official capacities and against the federal defendants/agencies may also be dismissed based on Eleventh Amendment immunity and sovereign immunity, respectively.

Plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000) ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."). Waiver of sovereign immunity is a jurisdictional prerequisite to suit against the United States. *See F.D.I.C. v. Meyer*, 510 U.S. 471 (1994). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Meyer*, 510 U.S. at 415 (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *see Uzamere v. United States*, No. CA 13-505 S, 2013 WL 5781216, at *9 (D.R.I. Oct. 25, 2013), *aff'd* (1st Cir. Apr. 11, 2014) ("Because the United States has not waived sovereign immunity with respect to the claims raised in this case, I recommend that this Court dismiss with prejudice every such claim based on the lack of subject matter jurisdiction against the several hundred Defendants who constitute the United States.").[14] The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.

Plaintiff does not demonstrate a waiver of the federal or state defendants' sovereign immunity. Plaintiff's vague claims that the judiciary's creation of case law regarding the prohibition on filing antisemitic submissions "abrogates the Fourteenth

---

[14] The District of Rhode Island further held, "because this is not Plaintiff's first attempt to sue the United States, *Uzamere v. United States Postal Serv.*, 09-CV-3709 (NGG), slip op. at 2-4 (E.D.N.Y. Oct. 15, 2009) (claims against United States agency barred by doctrine of sovereign immunity and dismissed for lack of subject matter jurisdiction with warning), the entire Amended Complaint should be dismissed as malicious based on Plaintiff's conduct in naming so many federal officials who she already knows are protected by the doctrine of sovereign immunity. *See Uzamere*, 2013 WL 5781216, at *9.

Amendment and triggers the Application of 42 U.S.C. § 1983" are entirely without any valid legal support or merit; the one case citation she provides does not demonstrate otherwise.  Dkt. No. 6 at 45-46.

Accordingly, the undersigned observes that plaintiff's claims against the State of New York for monetary damages or against the individual state officials in their official capacities may be alternatively dismissed on the basis of Eleventh Amendment immunity, and the claims against the federal entities may be dismissed on the basis of sovereign immunity.

### 6.  Res Judicata & Collateral Estoppel

Plaintiff has demonstrated that she has repeatedly raised the same or similar claims in both state and federal court, suing many of the same defendants she seeks to sue in this action, including her claims under Section 1983, the Sherman Antitrust Act, and the Racketeering Influenced and Corrupt Organizations Act.  *See, e.g.*, Dkt. No. 6-43 at 26 ("In the interest of brevity, the Court is not going to recite the entire factual background or extensive procedural history outlining all the litigation plaintiff has engaged in over the years in both State and Federal court since most of the pertinent litigation has already been outlined by the Hon. Arthur M. Shack in the case of *Uzamere v Uzamere* (28 Misc 3d 1207 [Sup Ct, Kings County 2010]) as well as by the Hon. LaShann DeArcy Hall in *Uzamere v Uzamere* (2022 US Dist LEXIS 172739 [ED NY, Sep. 23, 2022, No. CV-4876, Hall, J.] . . . .)."  Plaintiff's complaints before other courts, including the Eastern District of New York, raises, at points, identical arguments to those she raises here.  Although there are some additional and different claims between this case and others, all are grounded in the same underlying "Jewish cartel" conspiracy

theory and sees to tie in the decades-old claims regarding her marriage, spousal support, child support, and immigration fraud claims against her husband and various agencies, including many of the same exhibits.  *See* Dkt. No. 6-2 at 23-121.

The Eastern District of New York, among others, has already determined these claims to be frivolous or that the Courts are without subject matter jurisdiction. The Eastern District of New York has summed up plaintiff's approach in that court and others, many claims of which she also raises before this Court, as "a continuation of her indefatigable efforts to litigate matters arising from her marriage and abandonment by her husband."  See Dkt. No. 6-48 at 2.  In addition to dismissing her federal claims for frivolity, the Eastern District concluded that it lacked subject matter jurisdiction due to the domestic relations abstention doctrine.  *See Uzamere v. Uzamere*, No. 22CV4876 (LDH/LB), 2022 WL 4451107, at *3 (E.D.N.Y. Sept. 23, 2022) (citing FED. R. CIV. P. 12(h)(3)).  This Court lacks subject matter jurisdiction for the same reasons, and for many others.  The District of Rhode Island dismissed plaintiff's claims of a "Jewish conspiracy" as "irrationally and wholly incredible." *Uzamere v. United States*, No. CA 13-505 S, 2013 WL 5781216, at *16 (D.R.I. Oct. 25, 2013), aff'd (Apr. 11, 2014).  Thus, the undersigned observes that at least some of plaintiff's complaint before this Court may be able to be alternatively dismissed based on the grounds of collateral estoppel and res judicata.

### 7.  Additional Grounds for Dismissal

The undersigned has recognized throughout the Report-Recommendation & Order that there are likely several additional grounds to dismiss plaintiff's claims, including, but not limited to, a potential *Heck v. Humphrey* bar (as to matters relating to

her criminal prosecution(s) as the status of any such prosecution(s)/conviction(s), etc. is unclear), the fact an individual plaintiff cannot seek criminal prosecution of a defendant ("seditious conspiracy" claims), statute of limitations grounds, and the Domestic Relations Abstention Doctrine[15] (for claims relating to spousal and child support), *Monell* (against municipal defendants and their officials), prosecutorial immunity, and the lack of a private right of action. However, because there are multiple alternative grounds for dismissal, discussed above, such review is not required. Accordingly, in the interest of judicial efficiency, the undersigned declines to review those additional grounds in detail at this time.

IV. **Warning**[16]

Although plaintiff is "new" to this District, given that this appears to be the first action she has commenced here, based on her pattern of behavior in similar actions in other courts, her frivolous[17] threats of legal action against clerk's office employees, and the content of this amended complaint, it is likely plaintiff will seek to pursue additional frivolous and duplicative lawsuits in this District. "Given plaintiff's vexatious history of filing significant numbers of frivolous actions, it is further recommended that, if the District Judge adopts this Report-Recommendation & Order, the District Judge warn plaintiff that if he is to file further frivolous actions in this district, a bar order may result."

---

[15]  See, e.g., *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12-13 (2004) (internal quotation marks and citations omitted), *abrogated on other grounds by Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

[16]   The undersigned recognizes that there are likely several other grounds upon which the Court could dismiss her complaint

[17]   Plaintiff has advised this District's employees that she would pursue legal action against them because she felt her case was not proceeding as expeditiously as she would prefer, grounded in her baseless belief that clerk's office employees were intentionally "hiding" filings from the judges, rather than the fact this District has a heavy docket, and plaintiff's case and filings were filed relatively recently.

*Emrit v. Grammys Awards on CBS*, No. 1:23-CV-1155 (TJM/CFH), 2023 WL 6577793, at *6 (N.D.N.Y. Oct. 6, 2023), *appeal dismissed*, No. 23-7707, 2024 WL 2044162 (2d Cir. Mar. 21, 2024), *and report and recommendation adopted*, No. 1:23-CV-01155 (AMN/CFH), 2024 WL 3083307 (N.D.N.Y. June 21, 2024).[18]

Given that plaintiff oft commences actions in forma pauperis but then pays the filing fee, the undersigned recommends that any warning advise plaintiff that any bar that may be imposed – after providing her with notice and an opportunity to be heard – would prohibit her from filing any new action, either in forma pauperis or through paying the filing fee, without prior permission of the Court.  *See Uzamere v. Uzamere*, No. 22:CV-4876 (LDH/LB), 2022 WL 4451107, at *5 (E.D.N.Y. Sept. 23, 2022) ("In light of the nature of Plaintiff's instant action, her incessant submission of vexatious and repetitive lawsuits, and Plaintiff's persistence despite numerous warnings and a prior filing injunction issued by the Southern District of New York, she is hereby directed to show cause why she should not be barred from filing any new action (*regardless of whether Plaintiff pays the filing fee or seeks in forma pauperis status*) in this Court

---

[18] The undersigned further wishes to make the District Judge aware that the Clerk's office has informed the undersigned that plaintiff has engaged in daily harassing phone calls/electronic help-desk communications to this Court's clerk's office, where plaintiff often raises her voice; spews abusive, racist comments toward the recipients of her calls; and threatens lawsuits against court employees because she disagrees with the amount of time it takes for the Court to address her filings.  When advised that the Court is aware of her filings and that they will be addressed in due course – which is in line with the Court's large volume of cases, including many that were filed before plaintiff's – plaintiff accused the nonjudicial staff of conspiring to "hide" her filings from the judges.  The undersigned observes that plaintiff has previously engaged in similar conduct toward clerk's office employees in at least one prior case, with the Eastern District of New York noting that, in addition to "engag[ing], at times, in harassing, and sometimes antisemitic telephone calls to the Clerk's Office and to chambers[,]" plaintiff even "attempted to contact judicial staff outside of the Courthouse." *Uzamere v. Uzamere*, No. 22-CV-4876 (LDH/LB), 2022 WL 4451107, at *4, n.3 (E.D.N.Y. Sept. 23, 2022) ("Plaintiff is prohibited from directly contacting any judicial chambers by telephone, electronic mail, fax, or other means.  Plaintiff is prohibited from contacting Court staff outside of the Court house (such as by the use of a judicial employee's personal phones, personal address or electronic mail or personal social medial accounts) for any matter related to any case filed in this Court.").

without first obtaining permission.") (emphasis added); *see also Li v. Dillon*, No. 21-CV-5735 (VEC), 2021 WL 3146033, at \*3 (S.D.N.Y. July 23, 2021), *aff'd on other grounds*, No. 21-1997-CV, 2022 WL 2661998 (2d Cir. July 11, 2022) (citing 28 U.S.C. § 1651) (warning the pro se plaintiff that future frivolous actions would result in application of bar order preventing the plaintiff from commencing new actions, either in forma pauperis or by paying the filing fee).[19]

## V. **Dismissal Without Leave to Amend**

Generally, a court should not dismiss a pro se complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (cleaned up).  However, as noted, a court has inherent power to dismiss without leave to amend or replead "where the substance of the claim pleaded is frivolous on its face," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988), or where amendment would otherwise be futile, *Hill v. Curcione*, 657 F. 3d 116, 123-24 (2d Cir. 2011); *see also Shapiro v. McManus*, 577 U.S. 39, 45-46 (2015) (holding that federal-question jurisdiction is lacking where the claims are "wholly insubstantial and frivolous," "essentially fictitious," or "obviously without merit" (cleaned up and citations omitted)). The undersigned recommends that the Court decline to grant Plaintiff leave to amend both because the complaint is frivolous on its face and because any amendments would be futile.

---

[19]  Plaintiff appears to acknowledge her prior frivolity to a limited degree as well as the fact that she has commenced multiple actions in various courts raising the same or similar claims ("While I again believe that I have causes of action sufficient to engage in litigation in this Court, I apologize for having wasted various federal courts' time and resources. I now file yet another action with the requisite humility and seriousness that is due this honorable Court, and commence this Complaint by introducing what I allege are constitutional principles that render my Complaint to be actionable by this Court[.]")  Dkt. No. 6 at 38-29

## VI. **Conclusion**

Wherefore, for the reasons stated herein, it is hereby

**RECOMMENDED**, that plaintiff's amended complaint, Dkt. No. 6, be **DISMISSED in its entirety with prejudice and without opportunity to amend** as frivolous, and it is further

**RECOMMENDED**, that, insofar as plaintiff's amended complaint seeks for this Court to review or intervene in pending or closed state court decisions or federal decisions, such request be alternatively **DISMISSED without prejudice and without opportunity to amend** for lack of subject matter jurisdiction, as noted herein; and it is further

**RECOMMENDED**, that plaintiff's request to participate in electronic filing by ECF, Dkt. No. 7, be **DENIED** without prejudice and with leave to renew in the event that the District Judge disagrees with this Report-Recommendation & Order and allows plaintiff's case to proceed[20]; and it is further

**RECOMMENDED**, that plaintiff's request for service by U.S. Marshals Service and an extension of time to "prepare a civil RICO statement," Dkt. No. 11, be **DENIED as MOOT**; and it is further

**RECOMMENDED**, that the District Court judge warn plaintiff (1) that if she is to file future frivolous and/or duplicative litigation in this District, entry of a Bar Order will likely result, preventing plaintiff from filing any new civil actions in forma pauperis or by payment of the filing fee without prior permission of the Chief Judge of this District,

---

[20]   In so recommending, the undersigned also considers plaintiff's documented history of filing a high volume of meritless, vexatious, burdensome filings, noted in her cases before other state and federal courts.

pursuant to 28 U.S.C. § 1651; and (2) that language/conduct that is considered verbally

harassing, disrespectful, and/or abusive toward court employees, by telephone,

electronic means, or otherwise, will not be tolerated, and may result in plaintiff being

subjected to sanctions, including, but not to, filing and communication restrictions;[21] and

it is further

RECOMMENDED, that, if the Court adopts this Report-Recommendation &

Order, the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that, although plaintiff paid

the filing fee in this action, any in forma pauperis appeal from the District Judge's Order

would not be taken in good faith[22]; and it is

ORDERED, that the Clerk serve this Report-Recommendation & Order on

plaintiff in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to

file written objections to the foregoing report.  Such objections shall be filed with the

Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN**

**(14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *See Roldan v. Racette*, 984

F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d

15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[23]

---

[21] *See, e.g., Divelbiss v. DeSpain*, No. 24-CV-650-JDP, 2025 WL 315387, at *2 (W.D. Wis. Jan. 28, 2025) (warning the plaintiff that, "due to his history of harassing, abusive, racist, and sexist phone calls and help-desk messages, all further communications from Divelbiss must be in writing only, with a caption including the case number about which Divelbiss is communicating. If Divelbiss does not comply with this order, I will consider sanctions against him, including barring him from filing additional motions or new lawsuits in this court."); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991) (noting that courts are vested "with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates," and may punish contempt with the imposition of sanctions).

[22] *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

[23] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  *See* FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday,

Dated: March 31, 2024
    Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge

---

or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *Id.* § 6(a)(1)(c).